**KENTUCKY UTILITIES CO., Inc. v. CONSOLIDATED TEL. CO., Inc.**

Court of Appeals of Kentucky.

March 28, 1952.

As Modified on Denial of Rehearing Oct. 31, 1952.

438

T. M. Galphin, Jr., and Ogden, Galphin & Abell, all of Louisville, Hunter Shumate, Irvine, for appellant.

Gregory W. Hughes and Hughes, Clark & Lee, all of Covington, J. M. Wolfinbarger, Irvine, for appellee.

LATIMER, Justice.

The chief question is whether the damage to appellee was caused by the negligent acts of appellant.

Appellant operates a power transmission system in the city of Irvine. Appellee operates a telephone system in Irvine and adjacent territory. Power lines for its power distribution are maintained by appellant on the south side of Broadway, running east and west. Appellee's cables are situated on the north side of Broadway. At the corner of Lilly and Broadway, appellee had a messenger cable, running at right angles to the appellant's power line and some ten to twelve feet below it. This messenger cable crossed Broadway at Lilly Street, being attached to poles on the northwest and southwest corners of these intersecting streets. This messenger cable performed the function of holding up damp-proof insulated telephone wires hanging one and one half to two inches below by means of

metal rings placed sixteen to eighteen inches apart.

About 8:30 on the evening of July 27, 1947, during a violent storm, two of appellant's power lines broke in two near the limbs of a tree approximately ten feet west of the intersection of Broadway and Lilly Street and fell upon this messenger cable. Whether these lines broke by coming together, causing a short and burning in two, or whether they broke by coming in contact with the tree limbs surrounding the wires is not definitely known.

While the storm was in progress, Mr. Crawford, manager of the appellee, was called to the exchange office. Upon reaching there he found the lights out and a disturbance on the switchboard. After an attempt to clear the alarm, he called Mr. Carney, manager of appellant, and informed him that some foreign current was coming into the telephone system. Carney admitted they were having trouble with their system. An unusual additional flash occurred around the switchboard while Crawford was clearing this alarm. On his return home, Crawford discovered Carney and other Kentucky Utilities' employees working on appellant's system near the intersection of Lilly and Broadway, where appellant's wire had fallen upon appellee's messenger cable. Appellee sustained considerable damage as a result of this disturbance to its system. 965 feet of "225 pair cable" running west from Lilly Street was destroyed. A portion of the cable east of Lilly Street was damaged and a small amount of damage was done to the exchange.

Appellee proceeded to restore its disrupted service, which took approximately two weeks. A "225 pair cable" was not available, so it used four cables to replace the one for a distance of 965 feet west of Lilly Street. The damaged cable and wire east of Lilly Street were repaired, as was the telephone exchange.

The court below returned a judgment in favor of appellee in the amount of $5,000. Appellant is here urging four grounds for reversal: (1) that the court below erred in overruling appellant's motion for a directed verdict made at the conclusion of appellee's case in chief and again at the conclusion of all of the evidence; (2) the court below erred in permitting appellee to introduce incompetent and prejudicial testimony; (3) the damages awarded by the jury were excessive and not supported by the evidence; and (4) erroneous instructions.

We direct attention to appellant's first contention. Based upon the theory of negligence, appellee established a duty of care owed to it by appellant; a breach of that duty; and damages received as a direct result thereof. The jury question was whether or not appellant was negligent and if so, was such negligence the proximate cause of appellee's damage. Appellee proved that appellant's power line ran ten to twelve feet above appellee's messenger cable; that it also ran between the limbs of a tree some ten feet west of the messenger; that it broke on July 14, 1947, and was replaced with no general cutting of these tree limbs surrounding them; that it broke again on July 27, 1947, and fell upon appellee's messenger cable; and that the messenger cable was burned and damage was inflicted on appellee's system by a foreign electrical current, allegedly man-made. At this point the burden shifted to appellant to explain away its neglect in not removing the danger to its power lines in these tree limbs, since it was charged with the highest degree of care because of handling electricity. It was incumbent on appellant to prove either that its negligence did not result in injury to appellee's system or that appellee was contributorily negligent.

The appellant attempted an explanation that its negligence was not the proximate cause of appellee's injury. It presented evidence to the effect that the foreign electrical current causing this injury was lightning, which did not stem from appellant's system. It also presented evidence to prove that appellee was contributorily negligent in not having this particular telephone pole grounded. It made much of the fact that appellee's messenger cable, upon which the appellant's wires fell, was not in actual contact with the cable which was damaged. However, appellee contended that such a current (4,100 volts) as came

from the appellant's power line could be transmitted over the wet pole to the cable which was attached to it for support. Appellant asserted that when these wires broke, the protective fuses blew out in the substation east of the break and de-energized them instantly, thus preventing them from doing any damage to appellee's system. However, in the testimony of one of appellant's witnesses the fact was brought out that possibly these lines were over-fused at the substation. As a result of this, there was a probability that the short circuit set up by these lines falling upon the messenger cable would not cause these fuses to blow out thereby cutting off the power. As to the contributory negligence of appellee in not having this particular telephone pole grounded, there was a conflict in the testimony as to whether such a practice is necessary to satisfy standard modern engineering practices. Consequently it cannot be said as a matter of law that appellee was contributorily negligent.

Appellant's proof and contentions conflicted with appellee's assertions, thereby presenting to the jury the question of whether or not the appellant's negligence was the proximate cause of appellee's injury. Therefore, no directed verdict was in order.

Appellant's second ground appears to be untenable. The court permitted Crawford to testify that Carney, manager of appellant company, said: "Possibly this is where your trouble was." This statement was made to Crawford at the time Carney and other Kentucky Utilities' employees were replacing this break in these power lines. Crawford's statement as to what Carney said to him is hearsay evidence. As disclosed, it was not a part of the res gestæ for Crawford was on his way home after the electrical disturbance in the telephone office. In order to be a part of the res gestæ, it must have arisen out of the main incident, be substantially contemporaneous with and serve to illuminate its character. Trevillian v. Boswell, 241 Ky. 237, 43 S.W.2d 715. The statement was not an admission of fact against appellant by its agent. It was nothing more than an opinion of a possibility, not an actuality. In the light of the circumstances of this case, we think the admission of this statement not sufficiently prejudicial to be held reversible error. However, on another trial the statement should not be admitted.

Appellant further contends the court erred in allowing Mr. Stephenson, a witness for appellee, to testify as to the value of the cable before and after the incident, since it was merely an opinion without any foundation or basis. We think the testimony should not have been admitted but for another reason, which will be explained in connection with our discussion of the next ground for reversal.

The next ground for reversal is that the judgment obtained was excessive and not supported by the evidence. We conceive that this addresses itself more to the question of what is the proper measure of damages than to the question of sufficiency of evidence, because the testimony as to market value before and after the accident tended to show damages in excess of the sum allowed by the jury, while the evidence as to cost of restoring the telephone line to its former condition tended to show damages less than the sum allowed by the jury.

The appellant argues, in effect, that the measure of damages applied in the case of damage to improvements on real estate should be applied here; namely, the cost of restoring the property to substantially the same condition it was in before the accident. See Louisville & N. R. Co. v. Howe, Ky., 243 S.W.2d 905; Great American Ins. Co. v. Crume, 292 Ky. 475, 166 S.W.2d 813; Ben Gorham & Co. v. Carter, 228 Ky. 214, 14 S.W.2d 749. The appellee contends that the rule as to personal property should apply, which is the difference in market value immediately before and immediately after the injury. See 7 Kentucky Digest, Damages, ⊕113, page 86.

It may be that for some purposes a telephone line is personal property. See Inter-County Rural Electric Co-op. Corp. v. Reeves, 294 Ky. 458, 171 S.W.2d 978. However, no reason has been advanced why a telephone line must be treated as personal property for the purpose of applying a rule of damages, and we are of the opinion that

the line may be treated as real estate for the latter purpose if to do so will enable a more accurate and satisfactory determination of the amount of damages to be made. See Am.Jur., "Damages," sec. 107, p. 515. In fact, in Louisville & N. R. Co. v. Gillespie, 165 Ky. 575, 177 S.W. 451, the measure of damages applying to real estate improvements was held applicable to a telephone line.

■ It is apparent that any estimate of the market value of a portion of a telephone system would be conjectural, because in ordinary circumstances a portion of a telephone system would not be marketable as such. We think that cost of restoration will prove to be a better measure of damages in this case.

As previously mentioned, the telephone company here was unable to procure a "225 pair" cable to replace the one destroyed, and it was necessary to make a temporary installation of four smaller cables. The nature of the evidence of the cost of the temporary cables, and the cost of a new permanent single cable, was such that the jury may have been influenced to allow the full cost of both the temporary and the permanent cables. ■

■ We think the measure of damages should be the cost of procuring and installing the temporary cables, less their salvage value when replaced; plus the cost of procuring and installing a new permanent single cable, less a percentage of the cost of the latter cable equal to the percentage of depreciation existing in the original cable that was destroyed. See Reed v. Mercer County Fiscal Court, 220 Ky. 646, 295 S.W. 995, 54 A.L.R. 1275.

There was some evidence that portions of the telephone system, other than the "225 pair" cable, also were damaged. The same rule of cost of restoration should be applied to that damage.

■ The last contended ground for reversal is that the court erred in instructions, in that there was no basis given by which the damages were to be measured. We think this a valid ground for reversal. It is the duty of the court to furnish a criterion for the measurement of damages. Failure so to do has been held error by many decisions of this court. Chicago, St. L. & N. O. R. Co. v. Hoover, 147 Ky. 33, 143 S.W. 770; Chesapeake & O. Ry. Co. v. Johnson, 228 Ky. 296, 14 S.W.2d 1059.

Judgment is reversed for further proceedings consistent with this opinion.