RENDERED: MARCH 14, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0956-MR

NIKOLA JAJIC                                       APPELLANT

|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE MITCHELL PERRY, JUDGE |
|  | ACTION NO. 18-CI-007456 |

JENNIFER SAINATO; MARRIOTT
INTERNATIONAL, INC.; RLJ
LODGING TRUST; AND WHITE
LODGING SERVICES CORP.                          APPELLEES

AND

NO. 2023-CA-1021-MR

JENNIFER SAINATO                           CROSS-APPELLANT

|  | CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE MITCHELL PERRY, JUDGE |
|  | ACTION NO. 18-CI-007456 |

NIKOLA JAJIC; MARRIOTT
INTERNATIONAL, INC.; RLJ
LODGING TRUST; AND WHITE
LODGING SERVICES CORP.                      CROSS-APPELLEES

AFFIRMING IN APPEAL NO. 2023-CA-0956-MR
AND AFFIRMING IN PART, REVERSING IN PART, AND REMANDING IN
CROSS-APPEAL NO. 2023-CA-1021-MR

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND McNEILL, JUDGES.

CETRULO, JUDGE:  Nikola Jajic ("Jajic") appeals the Jefferson Circuit Court's

April 19, 2023 judgment of a jury verdict and the July 27, 2023 order on the

parties' post-judgment motions.  Jennifer Sainato ("Sainato") cross-appeals also

challenging the trial court's July 7, 2021 order granting summary judgment in

favor of Marriott International, Inc., RLJ Lodging Trust, and White Lodging

Services Corp. (collectively, "Marriott").  In appeal No. 2023-CA-0956-MR, we

affirm.  In cross-appeal No. 2023-CA-1021-MR, we affirm, in part; reverse, in

part; and remand for a new trial.

## BACKGROUND

In January 2018, Sainato traveled to Louisville, Kentucky for work.

On the night in question, Sainato drank two glasses of wine at dinner and another

glass or two later at the hotel bar.  At the bar, Sainato met another guest, Jajic, and

the two shared a table and conversation.  Eventually, Sainato and Jajic went to the

hotel patio to smoke, then returned to the bar.  Hotel video shows the two leaving

the bar area and walking of their own accord into Sainato's room together shortly

after midnight.  Beyond those facts, their descriptions of the night are dramatically different.

Sainato stated that when they went to the hotel patio to smoke, Jajic gave her a cigarette that looked "lumpy" and had a metallic taste.  Sainato claimed she recalled feeling strange after smoking the cigarette and did not finish it.  Sainato testified that she had declined Jajic's invitation to his room and her last complete recollection was leaving the bar area.  She stated that later that night, she was in and out of consciousness and could not control her limbs.  She recalled being choked, tied to a chair, her head banging against something, and she believed she was sexually assaulted by Jajic and another unknown man.

Jajic described the events of that night quite differently.  He disputes Sainato's description of the cigarette and stated there was nothing out of the ordinary about the cigarette.  Jajic maintains the entirety of the parties' interaction, including sexual intercourse, was consensual and that Sainato invited him to her room.  Jajic testified that after consensual sex, he took a shower in her room and then returned to his room for the remainder of the night.  Jajic asserted that no one else was in Sainato's room with them.

At approximately 2:30 a.m., Sainato called her niece.  Her niece later testified that Sainato was "hysterical" and told her that she had been sexually assaulted by multiple men.  The niece contacted Sainato's son, who called the front

desk of the Marriott. A hotel employee went to Sainato's room and found her room locked from the inside. Sainato answered the door, asked the employee to leave, and did not report a sexual assault.

Thirty minutes later, Sainato's son called the hotel again and requested police presence. Marriott called Louisville Metro Police Department ("LMPD") and eventually emergency medical services personnel transported Sainato to University of Louisville Hospital. At the hospital, a specialized nurse examined Sainato and reported signs of sexual assault, acute confusion, vaginal bleeding, and three documented vaginal lacerations. Her blood alcohol content ("BAC") was 0.13g/100 ml at 5:45 a.m. Additional tests did not detect the presence of other drugs or substances.

Marriott's Director of Human Resources, Kimberly White ("Director White"), investigated, took photographs of Sainato's room, reviewed security video footage, and generated a report. She shared the report with members of Marriott's management and gave portions of the video footage and photographs to LMPD. Except for those portions of video given to police, the remainder of the hotel's security footage deleted automatically when the system overwrote outdated video. The existing videos showed Sainato carrying a wine glass and Jajic pulling her luggage as they went up the escalator and into her room.

LMPD contacted Jajic and interviewed him. He denied Sainato's version of events and cooperated with the police investigation. LMPD did not file any criminal charges against Jajic.

In December 2018, Sainato initiated the underlying action against Jajic and Marriott. Against Jajic, Sainato brought claims of civil battery and intentional infliction of emotional distress ("IIED"). Additionally, Sainato brought a claim of IIED against the hotel and accused Marriott of negligence for (a) facilitating Jajic's conduct, creating an unsafe environment, and failing to follow proper policy, and (b) serving alcoholic beverages to her and "others" in violation of Kentucky's dram shop act.[1]

In July 2021, the trial court granted Marriott's motion for summary judgment dismissing Sainato's claims against the hotel for negligence, dram shop liability, and IIED. Sainato filed a motion to alter, amend, or vacate the summary judgment which the trial court granted, in part. In August 2021, the trial court reversed only its dram shop liability ruling. The matter proceeded to trial on battery and IIED claims against Jajic, and dram shop liability against Marriott.

---

[1] A dram shop is "[a] place where alcoholic beverages are sold[.]" *Dram Shop*, BLACK'S LAW DICTIONARY (12th ed. 2024). Kentucky prohibits the sale (or gift) of alcoholic beverages to minors or any person "apparently" under the influence of alcohol and/or other intoxicating substances. Kentucky Revised Statute ("KRS") 244.080. Violation of this statute could result in civil liability for a failure to exercise reasonable care. *Carruthers v. Edwards*, 395 S.W.3d 488, 492 (Ky. App. 2012); KRS 413.241.

In January 2023, the Jefferson Circuit Court held a six-day trial. Marriott employees testified that on the night in question, Jajic appeared to be intoxicated, but Sainato did not. Sainato testified that she had consumed only one to two glasses of wine at dinner before arriving at the hotel and one to two glasses of wine at the Marriott. A hotel guest who stayed in a room near Sainato on the night in question testified to calling the front desk at 2:40 a.m. to report loud voices coming from Sainato's room followed by a woman crying.

After three days of deliberations, the jury found in Sainato's favor on the civil battery claim. Jury Instruction No. 1, the civil battery claim, read:

> Plaintiff Ms. Sainato has brought a claim of Civil Battery against the Defendant, Mr. Jajic. You will find for the Plaintiff if you are satisfied from the evidence:
>
> a. That Mr. Jajic subjected Ms. Sainato to sexual contact without her consent;
>
> OR
>
> b. That Mr. Jajic subjected Ms. Sainato to sexual contact when she was incapable of consent because she was either mentally incapacitated or physically helpless, of which Mr. Jajic was, or should have been aware;
>
> Otherwise, you will find for the Defendant, Mr. Jajic.

The jury answered "yes" to "Do you believe from the evidence that Mr. Jajic subjected Ms. Sainato to sexual contact without her consent?"

Instruction No. 2, the IIED claim, asked the jury to determine whether Jajic had intentionally or recklessly caused severe emotional distress to Sainato that exceeded the bounds of common decency. The jury answered "no."

Instruction No. 3 requested the jury to apportion fault between Sainato and Jajic for failure to exercise ordinary care. The jury apportioned 45% of fault to Sainato and 55% to Jajic.

Instruction No. 4 addressed damages. The jury awarded $1,121,000 in compensatory damages to Sainato for medical expenses, pain and suffering, lost wages, and loss of future earnings. The jury also awarded her $50,000 in punitive damages.

Instruction No. 5 addressed the dram shop claim. The jury found in Marriott's favor, answering "no" as to whether a reasonable person (under the same circumstances as Marriott's employees) should have known that either Sainato or Jajic was intoxicated when served.

The trial court entered final judgment consistent with the jury's findings but reduced Sainato's compensatory award to $666,550 consistent with the jury's apportionment. Both Sainato and Jajic filed post-judgment motions which the court denied. This appeal and cross-appeal followed.

**ANALYSIS**

On appeal, Jajic argues: (1) there was insufficient evidence to prove Sainato was incapable of consent or to prove her battery claim; (2) there was insufficient evidence to support the award of punitive damages; (3) if the punitive damages are upheld, they must be apportioned; and (4) he was entitled to a new trial due to improper statements made by Sainato's counsel and/or the excessiveness of the damages.

On cross-appeal, Sainato argues: (1) the trial court erred when it granted summary judgment to the Marriott on her negligence claim; (2) the jury should have been instructed on spoliation of evidence as to Marriott; and (3) the court erred as a matter of law by instructing the jury on apportionment of fault for the civil battery.

### A. Jajic's Direct Appeal (No. 2023-CA-0956-MR)

First, Jajic argues the evidence does not support the verdict on Sainato's battery claim because Sainato did not prove an absence of consent.

We are "highly deferential" when reviewing jury verdicts for sufficiency of evidence. *Getty v. Getty*, 581 S.W.3d 548, 553 (Ky. 2019) (citation omitted). We must affirm a jury verdict unless it was so "flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice." *Bierman v. Klapheke*, 967 S.W.2d 16, 18-19 (Ky. 1998) (citation omitted).

Civil battery is "any unlawful touching of the person of another . . . [.]" *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (citation omitted). In a sexual assault constituting a civil battery, the plaintiff must prove the absence of consent. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 726 (Ky. 2009) (quoting *Vitale*, 24 S.W.3d at 658-59). An absence of consent can be established due to mental incapacitation or physical helplessness. *See id.* (citing KRS 510.020(3)(d)-(e)). The jury determined that Sainato either did not give her consent or was incapable of giving her consent. Jajic argues this finding was not supported by the evidence at trial, but we do not agree.

Jajic argues the jury verdict is improper because "the evidence was insufficient to support [] Sainato's claim that she was incapable of consent, due to either being 'mentally incapacitated' or 'physically helpless.'" Jajic points out that toxicology reports contradicted her testimony regarding the possibility that she was drugged via the cigarette, and her testimony as to the amount of wine she drank does not support her claim that she was unable to consent. Jajic claims Sainato's low alcohol levels "would not be sufficient to incapacitate a person to the extent that they would be incapable of giving consent." However, this conclusory statement alone is not sufficient for relief. *See Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018) (finding conclusory statements paired with only general recitation of legal theory to be insufficient for relief). Jajic had an opportunity to support this

-9-

argument at trial by establishing – through expert testimony or otherwise – the effects and behaviors of a person with a BAC of .13 – but chose not to do so. Essentially, if he wanted to show that Sainato was only minimally intoxicated, and therefore not mentally incapacitated or physically helpless, he should have presented expert testimony during trial to support that argument.

At trial, Sainato presented evidence that she had consumed alcohol;[2] she felt impaired and distressed; her memory was inconsistent and fractional; she was described as hysterical and confused; and, medical staff found signs of possible sexual assault. Hence, the jury's verdict was not unreasonable; the jury could have believed Sainato's testimony and evidence showing her altered and/or impaired state of mind. The verdict is not "flagrantly against the evidence so as to indicate that it was reached as the result of passion or prejudice." *Bierman*, 967 S.W.2d at 18-19 (citation omitted). We must keep in mind that "[d]eciding whose version to believe and weighing witness credibility is entirely within the jury's discretion." *Taylor v. Commonwealth*, 671 S.W.3d 36, 44 (Ky. 2023) (citation

---

[2] Jajic also argued BAC results must be admitted through expert testimony, and as Sainato did not call any such expert, the results should have been excluded under Kentucky Rule of Evidence ("KRE") 403. However, at trial, the BAC results were introduced during Sainato's testimony without objection from Jajic. Without a timely objection, this argument is not preserved for our review. *See* KRE 103(a)(1). There is no evidence Jajic moved to exclude the BAC results or joined the Marriott's motion to do so. If Jajic did so orally during pre-trial hearings, it is not part of the record on appeal. *See* Kentucky Rule of Appellate Procedure ("RAP") 24(A)(3). Jajic was responsible for designating such proceedings to be included in the record and ensuring this Court received the complete record. RAP 24(B)(1)(a); *Gambrel v. Gambrel*, 501 S.W.3d 900, 902 (Ky. App. 2016) (citation omitted). Thus, the argument is not preserved.

omitted).  It is not uncommon for a jury to be presented with contradictory evidence.  *See Morgan v. Commonwealth*, 421 S.W.3d 388, 393 (Ky. 2014) (citation omitted).  Despite evidence to the contrary, the record was nevertheless sufficient to support the jury's verdict that Sainato either did not give her consent or was incapable of giving her consent.  We find no error.

Second – after his sufficiency of the evidence argument – Jajic argues the judgment does not support the award of punitive damages.  He claims the verdict is inconsistent because the jury first found in his favor on Sainato's claim of IIED but then awarded Sainato punitive damages.  The jury's finding in his favor on one claim does not insulate him from liability for an independent claim under a separate instruction.  *See McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 285-86 (Ky. App. 2009).  Jajic's argument ignores the jury's independent finding for Sainato on the civil battery claim.  Under Instruction No. 1, the jury "believe[d] from the evidence that Mr. Jajic subjected Ms. Sainato to sexual contact without her consent."  Regardless of the jury's verdict on the IIED claim, punitive damages were available based on the battery claim.  *See* KRS 411.186; *see also Banks v. Fritsch*, 39 S.W.3d 474, 481-82 (Ky. App. 2001).

Additionally, Jajic argues Sainato was required to prove gross negligence to recover punitive damages.  This is an incomplete statement of the circumstances in which punitive damages may be awarded.  By statute, a plaintiff

may recover punitive damages if she proves the defendant acted with "oppression, fraud or malice." KRS 411.184(2). Punitive damages may be awarded where an intentional tort was committed. *Hensley v. Paul Miller Ford, Inc.*, 508 S.W.2d 759 (Ky. 1974). "The threshold for the award of punitive damages is misconduct involving something more than merely [the] commission of the tort." *Fowler v. Mantooth*, 683 S.W.2d 250, 252 (Ky. 1984). The purpose of punitive damages is to "punish a defendant, deter future wrongdoing, and express [] moral condemnation." *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 64 (Ky. 2018) (citation omitted). The award is meant to reflect the "degree of reprehensibility" of the defendant's conduct. *Id.* at 65.

Jajic argues punitive damages should not have been awarded because the jury found his conduct did not "clearly exceed[] the bounds of common decency as would be observed in any civilized community." This argument fails on two grounds. First, Jajic overstates what is discernable from the jury's verdict on Instruction No. 2.[3] He claims the jury found in his favor on each of the three

---

[3] Instruction No. 2 reads:

> The Plaintiff, Ms. Sainato, has brought a claim for [IIED] against the Defendant, Mr. Jajic. You will find for Ms. Sainato if you are satisfied from the evidence as follows:
>
> a. That by subjecting Ms. Sainato to non-consensual sexual contact, Mr. Jajic . . . either intended to cause her emotional distress, or if he did not actually so intend, nevertheless knew or had reason to know that such distress would result

-12-

elements of IIED, but the jury did not.  Because Sainato was required to prove all three elements to succeed under Instruction No. 2, we can only say with certainty that the jury was unconvinced by her proof on at least one element.  Therefore, Jajic's claim that the jury found his conduct did not exceed the bounds of common decency is inaccurate.

Moreover, Jajic's argument again ignores the jury's verdict under Instruction No. 1.  The jury was convinced that Jajic subjected Sainato to sexual contact without her consent.  In our analysis, "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *R.O. v. A.C. ex rel. M.C.*, 384 S.W.3d 185, 189 (Ky. App. 2012) (quoting *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 1599, 134 L. Ed. 2d 809 (1996)).  To evaluate the degree of reprehensibility, a jury should consider whether:

> the harm caused was physical as opposed to economic; the
> tortious conduct evinced an indifference to or a reckless

---

> but did not care whether it did or not;
>
> b.  That such conduct did in fact cause Ms. Sainato to suffer severe emotional distress;
>
> AND
>
> c.  That such conduct by Mr. Jajic clearly exceeded the bounds of common decency as would be observed in any civilized community.
>
> Otherwise, you will find for the Defendant, Mr. Jajic.

disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id*. at 190 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521, 155 L. Ed. 2d 585 (2003)).

Here, it was reasonable for a jury to conclude that these factors do not weigh in Jajic's favor. The record shows Sainato suffered physical, mental, and emotional harm in addition to economic harm as a result of Jajic's battery. There is an apparent indifference or reckless disregard for the plaintiff's health or safety when a defendant engages in sexual contact without consent. Furthermore, the harm Sainato suffered was not the result of an accident but was caused by Jajic's intentional acts. Therefore, Jajic's conduct, as found by the jury under Instruction No. 1, was sufficiently reprehensible to support their decision to award punitive damages. There was no abuse of the jury's discretion in awarding punitive damages to punish Jajic and deter such conduct by him in the future.

Third, Jajic argues the punitive damage award should be apportioned in accordance with the jury's apportionment of fault under Instruction No. 3. As a matter of law, punitive damages cannot be apportioned. *See Louisville SW Hotel, LLC v. Lindsey*, 636 S.W.3d 508, 521 (Ky. 2021). On this basis, Jajic's argument fails.

Fourth, and lastly, we will now consider Jajic's argument that he was entitled to a new trial. A party may be entitled to a new trial for any of the following reasons:

> (a) Irregularity in the proceedings of the court, jury or prevailing party, or an order of the court, or abuse of discretion, by which the party was prevented from having a fair trial.
>
> (b) Misconduct of the jury, of the prevailing party, or of his attorney.
>
> (c) Accident or surprise which ordinary prudence could not have guarded against.
>
> (d) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court.
>
> (e) Error in the assessment of the amount of recovery whether too large or too small.
>
> (f) That the verdict is not sustained by sufficient evidence, or is contrary to law.
>
> (g) Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial.
>
> (h) Errors of law occurring at the trial and objected to by the party under the provisions of these rules.

Kentucky Rule of Civil Procedure 59.01. "[T]he trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere

-15-

unless it appears that there has been an abuse of discretion." *Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 111 (Ky. 2012) (citation omitted).

Jajic argues a new trial is warranted because Sainato's counsel made improper statements during opening and closing statements, but our review of the trial record shows Jajic did not object to any of the alleged improper statements. While Marriott objected to one of the statements, Jajic did not join the objection, and neither defendant requested a mistrial. "It is axiomatic that a party may not raise an issue for the first time on appeal." *Sunrise Children's Services, Inc. v. Kentucky Unemployment Ins. Comm'n*, 515 S.W.3d 186, 192 (Ky. App. 2016) (citations omitted). "It was incumbent" upon Jajic to object, request an admonition, and/or move for a mistrial based on counsel's statements. *See Lewis v. Charolais Corp.*, 19 S.W.3d 671, 676 (Ky. App. 1999) (citation omitted). Without any such action, this issue is unpreserved and evades our review.

Next, the record does not support Jajic's claim that the jury's verdict was impermissibly the result of passion and prejudice rather than consideration of the evidence. Jajic identifies the following as reasons the jury was prejudiced against him: (1) the Kentucky Trial Court Review contemporaneously posted about the trial and jury deliberations on Facebook; (2) Sainato participated in a podcast regarding the LMPD's handling of the related criminal investigation; and (3) Sainato displayed signs of grief and anguish in the jury's presence and was

seated next to the jury. We will briefly address each of these arguments individually.

Jajic presents no evidence that any member of the jury had knowledge of the Kentucky Trial Court Review's Facebook posts regarding the case. Even where jurors have been improperly exposed to media coverage during trial, to be entitled to a new trial, a party must "demonstrate[] actual prejudice." *See Davis v. Commonwealth*, 147 S.W.3d 709, 729 (Ky. 2004) (citation omitted). While it is concerning that the social media post reflected knowledge of the jury's deliberations to the point of their being "stuck at 8-4" after two days and that a juror had COVID-19, there is no evidence that the jurors themselves acted improperly. There is no proof showing any juror had knowledge of the Facebook posts during the trial or deliberations, and there is no evidence showing actual prejudice.

Further, the podcast was produced by the Kentucky Center for Investigative Reporting in 2019 and 2020, several years before trial. *Dig: Prosecution Declined*, LOUISVILLE PUBLIC MEDIA, https://www.lpm.org/podcast/dig (last visited Nov. 26, 2024). Jajic had the opportunity to question jurors about their familiarity with it during voir dire but chose not to do so. *See Moss v. Commonwealth*, 949 S.W.2d 579, 581 (Ky. 1997) (failure "to ask the proper question[s] on voir dire" precludes relief). Furthermore,

he again fails to show any juror had knowledge of the podcast and cannot prove he suffered actual prejudice from its mere existence.

With regard to Sainato's alleged displays of grief and anguish, Jajic had the opportunity to raise his concerns and request admonishment of the jury during trial. *See Coulthard v. Commonwealth*, 230 S.W.3d 572, 577 (Ky. 2007) (citations omitted). He did not do so. We understand that this was an "energetic and emotional trial" but there were no allegations of juror misconduct or impropriety brought to the court's attention during the trial. Jajic has again failed to prove he was prejudiced by Sainato's behavior or her proximity to the jury. Because none of Jajic's three arguments regarding the jury's passions and prejudices have individual merit, there is also no cumulative merit.

Finally, Jajic argues the "first blush" rule entitles him to a new trial. We disagree. Under the first blush rule, a damage award may be deemed excessive "if it causes the mind at first blush to conclude that it was returned under the influence of passion or prejudice on the part of the jury. Even if liberal, an award that does not shock the conscience or is not clearly excessive may not be set aside." *R.O.*, 384 S.W.3d at 191 (internal quotation marks omitted) (quoting *Ragland v. DiGiuro*, 352 S.W.3d 908, 920 (Ky. App. 2010)). In support of his argument, Jajic again claims the jury's answers to the various instructions are inconsistent with each other, but that is not a first blush argument (challenging the

amount of damages awarded). Jajic asserts that the jury should have weighed the evidence differently and reached a different outcome, but he does not directly challenge the amount of damages in question. Jajic does not explain how the damages shocked the conscience nor does he point to comparable caselaw exemplifying excessive awards. We shall not provide an argument for Jajic, and, thus, he did not establish the damages were excessive.

In light of the foregoing, Jajic did not establish any error that would mandate a new trial. However, this does not conclude our review.

**B.** **Sainato's Cross-Appeal** (No. 2023-CA-1021-MR)

Turning to Sainato's cross-appeal, she argues: (1) the trial court erred when it granted summary judgment to Marriott on her negligence claim; (2) the jury should have been instructed on spoliation of evidence as to Marriott; and (3) the trial court improperly instructed the jury on comparative fault because there was insufficient evidence in the record to prove Sainato was at fault for the civil battery.

First, in July 2021, the trial court granted Marriott's motion for summary judgment dismissing Sainato's claims against the hotel for negligence, dram shop liability, and IIED. Sainato filed a motion to alter, amend, or vacate the summary judgment which the trial court granted, in part. In August 2021, the trial

-19-

court reversed only its dram shop liability ruling. On appeal, Sainato challenges the July 2021 order granting summary judgment on the negligence claim.

> The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing [Kentucky Rule of Civil Procedure] 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Id.* Thus, a summary judgment looks only to questions of law, and we review *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016).

*Culp v. SI Select Basketball*, 663 S.W.3d 451, 453 (Ky. App. 2023).

To succeed on a claim of negligence, Sainato needed to establish: (1) Marriott owed her a duty, (2) Marriott breached that duty, and (3) she suffered a harm that was caused by Marriott's breach. *See Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023) (citation omitted). For premises liability cases involving third-party criminal acts, the owner of the premises owes a duty to protect patrons from only those third-party acts that are foreseeable, *i.e.*, those third-party criminal acts that could have reasonably been anticipated by the property owner. *Id.* at 28-29 (citing *Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270, 271 (Ky. 1958)). Sainato argues the trial court improperly dismissed her negligence claim

against the Marriott because the hotel had a duty to protect her from foreseeable harm, *i.e.*, Jajic's alleged battery, and the hotel breached that duty. She asserts that there exists an issue of material fact, thereby evading summary judgment, because the question of foreseeability remains unanswered. However, we do not agree because, under these circumstances, foreseeability falls within the *duty* analysis, not the *breach* analysis. *Culp*, 663 S.W.3d at 454 (citing *Reeves*, 671 S.W.3d at 27-28). Duty is a question of *law* for the court to determine (while breach and injury are questions of *fact* for a jury). *Id.* at 453 (citing *Pathways, Inc. v. Hammon*, 113 S.W.3d 85, 89 (Ky. 2003)).

Specifically relating to the negligence claim against Marriott (not the dram shop liability), there are no issues of material fact. The parties agree to the facts as they relate to Marriott and its staff and their duty to protect Sainato from Jajic. As the trial court pointed out in its July 2021 order,

> [n]othing in the evidence suggests that the Marriott staff were aware that [Sainato] was in danger or that Jajic intended to harm [Sainato] prior to the assault. . . . The Marriott staff received no complaints about Jajic's behavior prior to the assault and Jajic has no known criminal history.

Sainato does not dispute those facts. She does not claim that she informed hotel staff she was frightened of Jajic or Jajic was acting aggressively while at the hotel bar. She admits she interacted with him in the bar on her own volition. Video cameras show her walking with him to her room, and she does not

-21-

challenge the video evidence. There is no issue of material fact as it relates to *this* claim.

Assuming *arguendo* that a criminal act occurred,[4] whether Marriott had a duty to protect Sainato from Jajic's alleged actions hinges upon a question of law for the courts to decide. *See Reeves*, 671 S.W.3d at 27-28. We must determine the foreseeability of Jajic's conduct and whether Marriott could have anticipated Jajic's actions. *See id.* at 27-28. To succeed, Sainato needed to demonstrate that Marriott should have anticipated his battery. *Id*. She did not meet this burden.

Sainato does not state any specific act the Marriott staff did in error *or* should have done *or* did in contradiction to its policies and procedures. Sainato provided no evidence of other similar criminal incidents occurring on Marriott's property. There was no evidence Jajic had been an aggressive guest or that Marriott should have known he was likely to become one. She claimed emergency medical personnel responded to calls from Marriott several times per month but largely failed to prove the reasons for those calls.[5] She cited to Marriott's workplace violence policy, but having such a policy does not prove the existence

---

[4] Again, no criminal charges were filed. We are treating the civil battery as a "third-party criminal act" for the sake of the argument in an attempt to specifically address Sainato's assertions on appeal.

[5] One call on the night prior to Sainato's stay was for "domestic trouble with violence."

of independent criminal behavior, let alone a pattern of similar criminal behavior as alleged herein.  Sainato failed to establish a pattern of conduct sufficient to prove Jajic's actions could have reasonably been anticipated by Marriott.  *See id.* at 29.  Thus, Jajic's alleged criminal acts were not reasonably foreseeable and the trial court did not err in granting summary judgment.

Second, Sainato argues the trial court erred in denying her request for a jury instruction on spoliation of evidence, the evidence being the Marriott video security footage.  Trial courts have discretion in deciding what admonitions and instructions to the jury are appropriate, and we review a court's denial of a spoliation instruction for abuse of that discretion.  *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 730-31 (Ky. 2020) (citation omitted).

Before giving a missing-evidence instruction, a trial court should consider whether:

> (1) the evidence is material or relevant to an issue in the case; (2) the opponent had absolute care, custody, and control over the evidence; (3) the opponent was on notice that the evidence was relevant at the time he failed to produce or destroyed it; and (4) the opponent, utterly without explanation, in fact failed to produce the disputed evidence when so requested or ordered.

*Id.* at 731 (emphasis added) (internal quotation marks and citations omitted).  In order to be entitled to a spoliation instruction, a party must prove "significant

evidence was forever lost to the prejudice of the party." *Id.* at 730 (internal quotations marks and citation omitted). Sainato did not meet this burden.

Director White testified that she began an investigation immediately after Sainato reported the incident. During her investigation, Director White reviewed security system video footage. She identified all footage showing Sainato and Jajic on the night in question. She then copied the relevant video clips and still photographs to a DVD and gave it to LMPD. At trial when asked about the different camera angles in the hotel common areas, Director White testified "there was not another angle that showed Ms. Sainato and Mr. Jajic at all. This was the only footage that we had that had them in the camera footage."

Sainato did not prove the missing footage was relevant to any issue in this case. Sainato's counsel questioned Director White about "missing" footage and different angles, but the director consistently testified that there were no additional angles or footage showing Sainato and/or Jajic. Sainato did not prove how the additional footage taken in the common areas of the hotel – which did not show either her or Jajic – further supported her arguments about events that happened within her private room. She argues the footage could have shown other men coming in or out of her room, but that footage could have cut both ways; it could have shown men coming and going, supporting her argument, but it also could have shown an absence of men, damaging her argument.

-24-

Sainato did not show that the Marriott destroyed the footage after being informed of its significance. In fact, Director White testified that Sainato advised Marriott that she was not pressing any charges and had initially refused to file a police report. Additionally, a missing-evidence instruction is not appropriate where the proof shows that the evidence was lost as a result of "destruction in the normal course of file maintenance, particularly in accordance with industry or regulatory standards." *Id.* at 730-31 (internal quotation marks and citations omitted). Here, Director White testified that Marriott erased the security footage, through the normal course of business, and Sainato did not show the destruction was irregular or inconsistent with industry norms.

The hotel gave the LMPD all footage involving Jajic and Sainato and explained the destruction of the remaining video as part of the normal course of business. Sainato did not show any deceit, malfeasance, or implications Marriott attempted to hide or improperly delete the security video. As such, the trial court did not abuse its discretion by failing to present the jury with a spoliation of evidence instruction.[6]

_____

[6] Sainato also claims that the jury should have been allowed to consider concealment by the Marriott in assessing punitive damages under KRS 411.186(2)(d). That claim fails on the same grounds. She did not prove the concealment of any evidence, including the video footage. Therefore, the trial court's decision to omit this portion of the statute from the jury instructions on punitive damages was not an abuse of discretion.

Third, and lastly, Sainato argues the trial court improperly instructed the jury on comparative fault because there was insufficient evidence in the record to prove Sainato was at fault for the civil battery. This argument presents us with two distinct questions. First, does Kentucky law permit a non-tortfeasor victim of a civil battery to be included within a comparative fault analysis? If so, was the evidence sufficient to find Sainato contributed to the battery? We hold that Kentucky law *does not* permit trial courts to include non-tortfeasor victims of a civil battery within the comparative fault analysis. Thus, we need not determine the sufficiency of the evidence as it relates to this issue.

Instruction No. 3 improperly permitted the jury to allocate Sainato partial fault. Sainato preserved this argument by challenging the comparative fault instruction prior to trial. Our review of the contents of the jury instruction is a question of law subject to *de novo* review.[7] *Disselkamp*, 600 S.W.3d at 709 (citation omitted).

Here, the jury found – under Instruction No. 1, the civil battery claim – that Jajic subjected Sainato to sexual contact without her consent. Despite this

---

[7] We note, the spoliation claim required an abuse of discretion review because that situation called for the trial court to match the law to the facts and determine if the evidence supported the spoliation instruction. Conversely, we apply a *de novo* review for this comparative fault analysis because we are addressing only a question of law, *i.e.*, whether the court was legally permitted to send the question of comparative law to the jury.

conclusion, the trial court nonetheless instructed the jury to consider apportioning fault to Sainato. Instruction No. 3 read:

> If you find for the Plaintiff, Ms. Sainato, under either Instruction No. 1 or 2, you will determine from the evidence and indicate in the blank spaces below what percentage of the total fault was attributable to the failure of each Ms. Sainato and Mr. Jajic to comply with their respective duty of ordinary care, as defined in the definitions.

The jury apportioned 45% fault to Sainato and 55% to Jajic. Implicit in this finding is that the jury believed Sainato breached her duty of ordinary care and was at partial fault for the sexual contact. However, such an implication is legally improper in multiple ways.

First, as a general rule, jury instructions are no place for assumptions. *Ten Broeck*, 283 S.W.3d at 726 ("[A]n instruction is erroneous if it assumes or has the appearance of assuming an essential fact concerning disputed evidence.") (citation omitted). By apportioning Sainato 45% fault, we must *assume* that the jury found Sainato breached her duty of ordinary care, but such an assumption is not permissible in jury instructions.

> The basic function of instructions in Kentucky is to tell the jury what it must believe from the evidence in order to resolve each dispositive factual issue in favor of the party who bears the burden of proof on that issue." PALMORE, *Kentucky Instructions to Juries*, Vol. II § 13.01 (5th ed.) (citing *Webster v. Commonwealth*, 508 S.W.2d 33, 36 (Ky. 1974)). And "[i]t is the duty of the court to furnish a criterion for the measurement of damages." *Kentucky*

*Utilities Co. v. Consolidated Tel. Co.*, 252 S.W.2d 437, 441 (Ky. 1952).

*Id.* If the court wanted the jury to determine whether Sainato breached a duty, that question needed to be *explicit*, but this case presents a bigger problem than the presumptive nature of Instruction No. 3.

Instruction No. 3 asked the jury to determine if Sainato failed "to comply with [her] duty of ordinary care." In essence, the trial court asked the jury to determine if Sainato was negligent[8] in her own sexual battery. We know that an *actor* committing a civil battery cannot act negligently because the tort itself is based on intentional acts. *Ten Broeck*, 283 S.W.3d at 732-33. However, we do not have clear precedent addressing whether a non-tortfeasor *victim* of a civil battery may be negligent. After review, we believe Kentucky law does not intend non-tortfeasor victims of civil batteries to be assessed with negligence, and therefore such a victim should not be included within a comparative fault allocation.

Kentucky – through the doctrine of comparative fault – distributes responsibility in proportion to fault. *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 294 (Ky. 2015) (citing *Hilen v. Hays*, 673 S.W.2d 713, 718 (Ky. 1984)). However, *implicit* in our comparative fault doctrine is the fact that only those parties *at fault*

---

[8] Negligence is defined as the "failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation[.]" *Negligence*, BLACK'S LAW DICTIONARY (12th ed. 2024).

can be assessed within the comparative fault analysis. This concept is *explicit* in KRS 411.182.

KRS 411.182(1), the apportionment statute, requires apportionment in all torts. *Hilsmeier v. Chapman*, 192 S.W.3d 340, 344 (Ky. 2006) (citing KRS 411.182(1)). This includes intentional torts such as assault and battery. *Nichols v. Hazelip*, 374 S.W.3d 333 (Ky. App. 2012) (affirming a decision that included apportionment of fault between three parties in an assault and battery case). Yet fault is not automatic; it is case specific and must be determined by the individual facts. KRS 411.182; *see also Floyd v. Carlisle Constr. Co., Inc.*, 758 S.W.2d 430, 432 (Ky. 1988) (discussing applicable comparative fault principles and the need for an *active assertion of a claim against joint tortfeasors*).

*Only tortfeasors* – parties "at fault" – may be included in the apportionment analysis. *See* KRS 411.182 ("In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of *each party at fault* and the extent of the causal relation between the conduct and the damages claimed.") (emphasis added); *see also Jefferson Cnty. Commonwealth Attorney's Office v. Kaplan*, 65 S.W.3d 916, 922 (Ky. 2001) (finding *only parties at fault*[9]

---

[9] This liability is not limited to co-defendants, but under some circumstances may include liability for plaintiffs. *See Nichols*, 374 S.W.3d 333 (wherein the plaintiff and two co-defendants were all properly included in the apportionment analysis because all three were part of a fight).

may be apportioned liability under KRS 411.180) (citation omitted). Yet here, the jury determined in Instruction No. 1 that Sainato did not consent to the sexual contact. In essence, Instruction No. 1 determined that Jajic was the lone tortfeasor and Sainato was the victim of the battery.[10] After this determination, no fault could legally be apportioned to Sainato because she was not a tortfeasor. Thus, Instruction No. 3 was improper. This error – the comparative fault instruction – was prejudicial because it misstated the law and likely caused the jury to confuse the issues. *See Disselkamp*, 600 S.W.3d at 724.

While we did not find Kentucky caselaw specifically on point, we believe our application of comparative fault is consistent with the treatment of the doctrine within the Commonwealth. For instance, in certain circumstances, Kentucky Courts have not extended fault to other *victims* of other intentional torts. *See by example Sommerkamp v. Linton*, 114 S.W.3d 811 (Ky. 2003) (apportioning fault in a medical malpractice case between a doctor and a medical center, but *not* the patient); *see also Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. App. 1998) (apportioning fault between a teacher and his employer in a sexual abuse case, but *not* the abused student).

---

[10] This interpretation of Instruction No. 1 is logically sound because a finding of consent would be an absolute defense to the alleged battery. *See Ten Broeck*, 283 S.W.3d at 726-29 (finding that when a party consents to sexual contact "there [can] be no sexual assault. . . . [And,] we either had a sexual assault, or we did not."). In circumstances such as those here, a middle ground does not exist between consent and absence of consent that would allow for apportionment of fault to a plaintiff/victim under KRS 411.182.

-30-

Further, in *Morgan v. Scott*, our Supreme Court reiterated that fault may only be apportioned among those against whom there is evidence of liability. 291 S.W.3d 622 (Ky. 2009). Where there is only one party *at fault* for an injury, whether through intentional acts or through breach of a duty, there can be no apportionment. *See id.* at 634. As the Court stated therein, "we can find nothing fundamentally unfair about assigning one hundred percent of the fault for an injury to the only party that breached a duty and caused the injury." *Id.* at 635. Our comparative fault principles do not "*give a party the right to apportion fault to persons whose liability has been judicially determined not to exist.*" *Id.* (quoting *Jenkins v. Best*, 250 S.W.3d 680, 686 (Ky. App. 2007)). Here, the jury determined that Jajic committed a battery upon Sainato without consent. Once the jury made that determination, there could be no apportionment, and Sainato "avoids liability for the simple reason that [she] did nothing that legally or proximately caused [her] injuries." *See id.* at 634.

We are also keeping with our broader understanding of comparative fault. We traditionally – without a showing of some malfeasance (*i.e.*, an overt act of aggression, instigation, or exacerbation) – do not apportion fault to victims of civil assault or battery for walking in an unsafe area, standing too close to combative individuals, or other such innocuous acts. To apportion fault to Sainato here would be akin to finding she was partially at fault for her own sexual battery

-31-

despite not acting with any malfeasance, a step we are unwilling to take.

RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT LIAB. § 1 (2000) explains:

> There is an intuitive sense that a plaintiff's own failure to use reasonable care should not affect a plaintiff's recovery against an intentional tortfeasor. This intuition draws on the image of a mugger who claims that the victim was negligent for being out too late at night or for wearing too much jewelry. In other situations, however, the intuition to reject a plaintiff's negligence as a comparative defense might not be as strong, such as when a defendant who otherwise batters a plaintiff honestly but unreasonably believes the conduct was privileged or that it was not harmful or offensive[.]

While not binding, we note that our application of comparative fault – or more accurately, our disinclination to apply comparative fault under these circumstances – is consistent with caselaw beyond our borders. For instance, in Illinois, a plaintiff's contributory negligence will not reduce a defendant's liability for willful and wanton conduct. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 593 N.E.2d 522, 532 (Ill. 1992). In Indiana, "a plaintiff in an intentional tort case may not be assigned a percentage of liability." *Becker v. Fisher*, 852 N.E.2d 46, 49 (Ind. Ct. App. 2006). In Louisiana, a trial court need not apply comparative fault in an intentional tort case where the plaintiff did not cause or contribute to his/her damages. *Baugh v. Redmond*, 565 So. 2d 953, 959 (La. Ct. App. 1990). In Mississippi, "the defenses of contributory or comparative negligence have no application to cases of intentional tort such as assault and battery." *Graves v.*

*Graves*, 531 So. 2d 817, 820 (Miss. 1988). In Alabama, "[i]t is elementary that contributory negligence is no defense to [charges] of an intentional wrong." *Jackson v. Brantley*, 378 So. 2d 1109, 1112 (Ala. Civ. App. 1979) (citation omitted). And in Ohio, the principles of comparative fault have no application to a cause of action based on intentional conduct. *Labadie v. Semler*, 585 N.E.2d 862, 864 (Ohio 1990).

The prejudicial effect of the improper instruction was further exacerbated by the incorrect sequence of the jury instructions. Jury instructions that include apportionment language should *first* ask the jury to assign an amount to damages, *then* apportion fault. (*See* PALMORE & CETRULO, *Kentucky Instructions to Juries*, Civil § 46 (6th ed. 2017)). KRS 411.182 requires the jury in an apportionment case to *first* determine:

> (a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and [*then*]
>
> (b) The percentage of the total fault[.]

KRS 411.182(1).

Here, as the apportionment determinations were reached *before* the damages, the damages award was likely influenced by that improper apportionment instruction. We have no choice but to presume the jury relied on those apportionments when deciding the damages. Therefore, merely dismissing

-33-

the apportionment alone is not enough.  We are required to remand for a new trial.

If the jury on remand again finds that Sainato did not consent to the sexual battery

and Jajic was the lone tortfeasor, then comparative fault is not appropriate, and

Jajic will bear the burden of the damages.

## CONCLUSION

Based on the foregoing, in appeal No. 2023-CA-0956-MR, we affirm

the orders of the Jefferson Circuit Court.  In cross-appeal No. 2023-CA-1021-MR,

we affirm the trial court's July 7, 2021 summary judgment and its denial of a jury

instruction on spoliation of evidence.  The jury's verdict finding of no dram shop

negligence upon the Marriott was not appealed and stands.  However, we must

reverse the court's April 19, 2023 judgment and remand for a new trial.



ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Lee E. Sitlinger
Louisville, Kentucky

BRIEFS FOR APPELLEE/CROSS APPELLANT JENNIFER SAINATO:

Garry R. Adams
Laura E. Landenwich
Louisville, Kentucky

BRIEFS FOR APPELLEES MARRIOTT INTERNATIONAL, INC.; WHITE LODGING SERVICES CORP.; AND RLJ LODGING TRUST:

Anthony M. Pernice
Quiyarra McCahey
Lexington, Kentucky